In THE MATTER of the petition of FREDERICK O. NOR-
TON *vs.* THE WALLKILL VALLEY RAILROAD COMPANY and
others.

Where, in a proceeding under the general railroad act of 1850, as amended by
the act of 1870, (*Laws of* 1870. *ch.* 560, § 1,) on the petition of a land owner
for the appointment of commissioners to change the location of the route
of a railroad as surveyed by the company, it appears by the testimony before
the commissioners that the petitioner has failed to comply with the direc-
tions of the statute, by giving notice of the application for the appointment
of commissioners, to an individual whose land, if the line of the railway be
changed, as proposed by the petitioner, will be crossed and affected thereby,
 · such proceeding is wholly void, and will be reversed, on appeal from the
decision of the commissioners.

Where, according to the smallest estimate of the width required for the rail-
road, on the proposed route, it will take a portion of the land of an individual,
and according to the largest estimate, it will take his dwelling-house; and, in
any event, within six feet of his dwelling, there will be a railroad, over
which he must pass to get to the highway; it cannot be said that such owner
is not "affected by the proposed alteration," merely because the *center line*
of the proposed railroad does not cross his land.

Such an owner comes within the purview, spirit, letter and intent of the statute
which requires notice to be given the owners and occupants of lands to be
affected by a proposed alteration of the route of a railroad.

The statute, in directing notice to be given to the owners or occupants of land
to be affected by any one proposed change, clearly contemplates but one
commission for that change, or proposed change; and, therefore, the greater
necessity that its strict terms shall be complied with, so far as to allow all the
persons to be affected by that line an equal opportunity to defend and protect
their interests. *Per* P. POTTER, J.

THIS is an appeal in a proceeding under the statute of
1850, in relation to the location of the routes of rail-
ways, as amended by the laws of 1871, (*ch.* 560,) to change
the location of the Wallkill Valley railway, as surveyed
over the lands of Frederick O. Norton, George Coutant,
and James Eltinge, in the town of Rosendale, Ulster county.
Although not definitely stated in the petition of F. O.
Norton, on which this proceeding is based, it subsequently
appears by the map and testimony of the petitioner and
others, before the commissioners, that the line of the rail-

way as proposed to be changed by the petitioner, will pass upon and affect the land of one Garton Keator.

The petition set forth, among other things, that the land of the petitioner and the lands of George Coutant and James Eltinge are the only lands, and they the only land owners, who are affected by the proposed change of location of the railroad.

*T. R. Westbrook*, for the appellants, the Wallkill Valley Railroad Company.

*S. Hand*, for the petitioner.

P. POTTER, J. The first real question in this case, in my opinion, is whether the petitioner instituted his proceedings in such form, as to confer jurisdiction upon the commissioners to be appointed. There is no doubt that the papers, in form, and upon their face, when presented to the court at special term, authorized the appointment of commissioners to examine the proposed route, for a change in the location of the defendants' railway, and would, *prima facie*, authorize the commissioners to affirm the original route, or to adopt the proposed alteration thereof. This being so, the *second* question that arises is, if after the appointment has been so made, it turns out in proof, before the commissioners, that the petitioner has failed to comply with the directions of the statute, by omitting to give notice to all the land owners affected, the proceeding is wholly void, or only voidable? And, *third*, if the proceeding is merely voidable, for the error so committed, is it not equally the duty of this court upon review, to reverse the proceeding?

In this case, the petitioner, by virtue of the provisions of section 22 of the general railroad act of 1850, as amended in 1871, (*ch.* 560,) is required, within 15 days after notice served on him by the defendant, of the location

of their road over his lands, if he feels himself aggrieved by the proposed location, to make his application to the Supreme Court, for commissioners to examine the route. The statute requires that he should give a notice in writing, of such application, to the railroad company, *and to the owners and occupants of lands to be affected by the proposed alteration.* The petitioner represented to the court that only two persons, land owners, besides himself, were affected by the proposed alteration, to wit, George Coutant and James Eltinge.

It turned out, in the testimony as it appears in the case, first, by a map conceded to be a correct representation of the two lines of the lands to be affected by the original, and the proposed change, made upon a scale of 100 feet to the inch; and also by the cross-examination of the petitioner himself, taken before the commissioners, that his proposed line would take lands of one Garton Keator, a land owner or occupant on that line, not mentioned in the petition; who did not join in the petition; and as to whom no evidence is found, in the case, that any notice of the application for the appointment of commissioners was served on him. The map shows that the *center line* of the *proposed* railroad ran within 12 feet of the lands of Garton Keator, and within 20 feet of his dwelling-house. If Keator is to be presumed to own the fee in one half of the highway opposite his lands, then the center line of the proposed road passes over lands to which he has title, subject to the easement of the public in the highway. There is no evidence in the case showing the width of the proposed railroad opposite the lands and house of Garton Keator; but it is shown by the map, and by the testimony of the petitioner, that the proposed line runs in the highway, at that point, which is, of itself, but about 40 feet wide. One witness makes it 25 feet wide. The map shows the proposed center line to be west of the center of the highway, and nearer than the center is to the lands

of Keator, which are on the west side of the highway. The whole width of the proposed or changed railroad, at that point, must necessarily be taken from the highway and the lands of Garton Keator. Whatever quantity it takes from the highway so far reduces its width from the amount of 40 or 25 feet. The title of the lands occupied by the highway belongs to somebody. If we may presume, in the absence of evidence, that it belongs to the petitioner, whose lands lie on the east side of the highway, still the public have an interest in its not being reduced in width below 40 feet, lying, as it does, immediately by the side of a railroad. It is but in the spirit if not in the letter of this statute, that they are the owners or occupants of lands to be affected by this proposed road, and notice to the proper authorities who have it in charge would be but just.

But there is an entire absence of evidence, in the case, of the width of the proposed railroad, or changed line to be used for a railroad; and there is also an absence of evidence of the width necessary for its construction, except what is obtained from the testimony of the petitioner himself, which was as follows : "I think my line won't touch Keator's house, unless they take 66 feet; then it will. It is about 20 feet from the center line of the route I propose, to G. Keator's house ; and if the line I propose was taken, it would take in Keator's house, the whole width of the highway, and does not interfere, between it and the railroad. It would not take the whole highway, running my route. It would take the whole of the highway from that point." This testimony is somewhat obscure, if not confused, but was obtained on his cross-examination. Then he was re-examined, and said : "I think the road (highway) is about 40 feet wide, near Mr. Keator's house. The proposed route *can be so laid* as not to take the house (Keator's.) The track is about 6 feet wide. I know about how wide railroad tracks are." Question.

" Do you know about the width of the railroad tracks of this W. V. R. W. ?" Answer. " About 6 feet for the single track; can't say exactly about the space between the two tracks; should say about 5 or 6 feet. The actual line of the tracks, and the space intervening, would be about 18 feet, I think."

Upon this evidence, alone, we are to judge of the width necessary to be used for the proposed road. If the space occupied by the two tracks should be six feet each, and six feet between them, making eighteen feet, then outwardly, from the outer track of each, three feet more, at least, is demanded, if the road is upon grade; making twenty-four feet, the least width which is absolutely required and necessary. If embankment or excavation is required, of which the case does not inform us, then as much more width must be allowed for slopes as is needed. Be this as it may, whether thirty-three feet is demanded on the west side of this proposed *center line*, or but twelve feet besides the slopes, it takes a portion of the land of Garton Keator; and if the widest allowance, then it takes his dwelling. In any event, within six feet of his dwelling is to be a railroad, over which he must pass, to get to the highway. To say that he is not *affected by this proposed alteration*, because the center line of the proposed railroad does not cross his land, would be doing violence to plain common sense. I think he comes within the purview, spirit, letter and intent of the statute which requires notice to the owners and occupants of lands to be affected by a proposed alteration of the railroad. This has not been given to Keator. The statute, in directing notice to be given to the owners or occupants of land to be affected by any one proposed change, clearly contemplates but one commission for that change, or proposed change; and therefore the greater necessity that its strict terms shall be complied with, so far as to allow all the persons to be affected by that line an equal opportunity to defend and

protect their interests.   We can hardly conceive of a case more directly affecting a person's property than that of having a railroad constructed up to the door of his house; if not indeed taking the house itself, and thus throwing, perhaps, an embankment or excavation between him and the highway.   If we sustain this report, we sanction this injustice, without giving an injured party his day in court. This the statute never intended; much less, the constitution.

I do not choose to place this decision on the ground of the omission to serve notice on the commissioners of highways, or on any representative of the public who have rights in the highway.   Nor do I intend to hold to the particular limit to which land owners may be affected. There are doubtless remote and collateral interests of land owners that are affected by every location of a road, and by every change of such road—such as that of increasing or diminishing their values.   Such cases, where no portion of the property is taken, cannot be supposed to be within the contemplation of the statute in question.   The burthen of proof, in this case, was upon the petitioner.   His rights to a change in the location were put upon the condition that the parties to be affected should have an equal right with himself to be notified, and to appear before the commissioners, to defend their interests.   This has not been done, if we judge by the case as presented.   If we are right in this view, then it is not important to review the decisions of the commissioners in admitting or rejecting evidence on the hearing; nor whether the weight of evidence was with or against the report they made.   They were intelligent men, and seem to have acted conscientiously and fairly.   But they could only act between the parties to the proceeding.   The railroad company had a right to demand a compliance with the statute, before they could be compelled to change their route.   This proposed

change brought Mr. Keator in to be negotiated with, and they put themselves upon the statute.

The result is, the proceeding must be reversed.

BALCOM, J. I concur in the conclusion arrived at by brother POTTER, for these reasons, viz: 1. Jurisdiction was not conferred on the commissioners, because notice was not given to Keator. 2. The commissioners erred in rejecting evidence offered by the Wallkill Valley Railroad Company. (*See case, folios* 51, 52, 53 *and* 56.)

MILLER, P. J. I am inclined to think that notice will be presumed within the case of *Wood* v. *Morehouse* (45 *N. Y.* 368;) and that the evidence offered by the defendants was not material; for if the evidence had been given, it would not operate as an estoppel.

Proceedings reversed.

[THIRD DEPARTMENT, GENERAL TERM, at Albany, March 5, 1872. *Miller, P. Potter* and *Balcom,* Justices.]